IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PERYLN PERINE,

          Plaintiff,

  vs.                            No. CIV 97-1004 JC/LFG

DONALD A. DORSEY, Warden;
JAN THOMAS, Deputy Warden;
LEWIS WEBER, Assoc. Warden of
Programs; and MICHAEL OLIVER,
Major/Chief of Security,

          Defendants.

## MAGISTRATE JUDGE'S ANALYSIS
## AND RECOMMENDED DISPOSITION[1]

      This is a pro se, in forma pauperis civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Perlyn Perine ("Perine"). Perine alleges that prison officials were aware of a planned assault on African-American prisoners by Hispanic prisoners, but did nothing to prevent the incident. Plaintiff names as Defendants, Donald Dorsey, Jan Thomas, Lewis Weber, Michael Oliver and Antonio Diaz. Perine seeks compensatory damages of five-hundred thousand dollars. T H I S MATTER is before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed April 3, 1998 [Doc. 19]; and upon Defendants' Motion for Summary Judgment, filed May 5, 1998 [Doc. 22].

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

On April 3, 1998, the Court entered Magistrate Judge's Analysis and Recommended Disposition. There, the Court ordered Defendants to prepare for filing a Martinez Report to further develop the factual or legal bases of Perine's claims. *See, e.g.*, *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The Court provided Perine with a deadline for responding to the report and further advised that the report may be used by the Court for summary judgment purposes. Defendants filed the Martinez Report on May 5, 1998. The docket sheet indicates that Perine has not filed a response to the two pending motions for summary judgment or to the Martinez report.

### Summary Judgment Standards

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598 (1970); *Quaker State Minit-Lube, Inc. v. Firemen's Fund Ins. Co,* 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment must shoulder the initial burden of establishing the absence of a question of fact. *Adickes*, 398 U.S. at 144. That burden is carried when the moving party demonstrates that the undisputed facts entitle the moving party to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). That initial burden can be shouldered when the moving party demonstrates by way of admissible evidence, by deposition, answers to interrogatories, admissions, affidavits or documentary evidence that the undisputed facts entitle the moving party to judgment. *Id.*

A party opposing summary judgment must do more than rely on its pleadings or mere argument or contention to defeat a *prima facie* showing of an entitlement to judgment. Federal law provides that the party opposing the motion for summary judgment must affirmatively come forward

with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Id.* at 234.  The requirement is made clear in the rule itself:

> An adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, will be entered against the adverse party.

Fed. R.. Civ. P. 56.  Thus, the burden on the party opposing a motion for summary judgment is significantly greater when the moving party successfully makes a *prima facie* showing of entitlement to judgment.  The test is not whether the party opposing the motion will be able to demonstrate a factual dispute at trial, but, rather, whether that party can demonstrate the presence of a material, factual dispute in response to the moving party's *prima facie* showing.  The Court will consider the Defendants' motions in light of the above standards.

Perine alleges that around December 4, 1995, Steve Richards, a Southern New Mexico Correctional Facility ("SNMCF") employee, was told by an African-American inmate about an incident between a Hispanic inmate and an African-American inmate.  Perine alleges that Richards passed this information on to an unidentified Anglo inmate and to Defendants Dorsey, Thomas and Weber.

Perine further claims that on December 5, 1995, a confidential informant told SNMCF prison administration in writing about an upcoming attack by the Hispanic population on African-American population during a basketball game, that weight lifting equipment would be used, and that weapons would be hidden in the gym.  Perine contends the attack did, in fact, take place on December 12, 1995, that he was hit on the head with weight lifting equipment and required medical care.  Finally,

3

Perine alleges that the New Mexico State Police investigated the attack, found that the attack was racially motivated and that the administration and security staff knew about it in advance.

The law is clear that "the Eighth Amendment protects prisoners against cruel and unusual punishment, a right interpreted to impose a duty on prison officials to protect prisoners in custody from violence at the hands of other prisoners." *Grimsley v. MacKay*, 93 F.3d 676 (10th Cir. 1996). "Being violently assaulted in prison is simply not `part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1977 (1994)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Perine must show personal involvement or participation in the incident. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisor status is not enough to support liability. *Id.* Indeed, a supervisor is not liable unless an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

In *Riddle v. Trevino*, 83 F.3d 1197, 1204 (10th Cir. 1996), the United States Court of Appeals for the Tenth Circuit set forth the requisite elements of this claim:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." [citation omitted]. Second, the inmate must establish that the prison official has "`sufficiently culpable state of mind,'" i.e., that he or she is deliberately indifferent to the inmate's health or safety. [citation omitted]. The prison official's state of mind is measured by a subjective, rather than an objective, standard. [citation omitted]. In other words, the official must "both be aware of facts from which the inference could be drawn that s substantial risk of serious harm exists, and he must also draw the inference." [citation omitted].

Our inquiry is even more specific when evaluating a prison official's response to a disturbance:

> In cases where officials must take measures to resolve disturbances the "deliberate indifference standard does not adequately capture the importance of the competing obligations of ensuring the safety of both the prison staff and the inmates themselves, nor does it convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance. In such a setting a court must look at whether the officials' actions were taken only to restore discipline or whether they acted "`maliciously and sadistically for the very purpose of causing harm.'"
>
> Thus, while the Eighth Amendment imposes the requirement of prison officials to restore control in tumultuous situations, "officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state."

*MacKay*, 48 F.3d at 492 [citations omitted].

Perine claims that Richards told the prison administrators about the racially motivated, planned attack. Defendants submitted the affidavit of Stephen Richards. Richards was a classification worker at SNMCF. He stated that he never received any information, confidential, written or otherwise, from inmates regarding a racial problem in December 1995. He further avers he never wrote a report or relayed any information to the Director of Classifications, Associate Warden or Chief of Security about a planned attack. (Martinez Report, filed May 5, 1998, Ex. A, Aff. Richards, ¶¶ 4,5, 7, 8). In addition, the Court directed the production of any reports received in advance describing the upcoming attack. No documents were found responsive to the request and Perine cannot come forward to controvert this finding.

Perine further alleged prison administration were aware of the assault in advance, but did nothing. This allegation is belied by the Court's review of the report and affidavit prepared by the New Mexico State Police Officer Rudolfo Ramirez as well as all the inmate interview statements.

While there had been some underlying racial tension following an incident between Oscar Betancourt and Freddie L. Torres, it is clear that prison administrators, prison staff, and, for the matter, the inmates did not know of the attack in advance. Perine has not come forward with any evidence to contradict this. Perine has shown no affirmative link between Defendants Dorsey, Thomas and Weber and the incident. Accordingly, summary judgment should be entered in their favor.

With respect to Perine's allegations towards Defendants Oliver and Diaz, the evidence submitted by Defendants, and not controverted by Perine, demonstrated that extra precautions were taken by Defendant Oliver after he was apprised before meal call that there might be trouble. Neither Defendant Oliver nor Defendant Diaz knew any specifics as to the type of trouble. They responded in a manner, short of a lock down, to ensure the safety of the inmates and prison staff. For example, the number of inmates at dinner was slowed so that there would be fewer people in the cafeteria at one time. With regard to the planned exercise hour, Defendant Oliver and Defendant Diaz responded by placing tape on the door locks so they could not be jammed. They arranged to have inmates scanned with a hand-held detector as they entered to check for weapons and to do a pat down. In addition, Oliver and Lt. James Moore were equipped with tear gas. The evidence shows that tear gas was used to de-escalate the situation and medical care was provided to those hurt.

In sum, while it is unfortunate that Perine was injured, the record clearly shows that Oliver and Diaz did not have the requisite mental state. The measures taken to abate the harm were reasonable. The use of tear gas helped break up the attack by getting inmates out of the gym. Perine has not shown that Defendants Oliver and Diaz had the requisite mental state for an Eighth Amendment claim of this type. Accordingly, summary judgment should be entered in their favor.

## **Recommended Disposition**

That Defendants' motions for summary judgment, filed April 3, 1998 and May 5, 1998, be granted and that judgment be entered in favor of the Defendants.

                                            */s/ Lorenzo F. Garcia*
                                            Lorenzo F. Garcia
                                            United States Magistrate Judge

PLAINTIFF:
Perlyn Perine, pro se

COUNSEL FOR DEFENDANTS:
Kathleen M.V. Oakey, Esq.